```
         IN THE UNITED STATES DISTRICT COURT
       FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
```

```
BRUCE J. FUNDERBURK,            )
                                )
          Plaintiff,            )
                                )
     v.                         )      1:21cv574
                                )
S.M. MCDONALD,                  )
                                )
          Defendant.            )
```

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This case comes before the undersigned United States Magistrate Judge for a recommendation on "Defendant McDonald's Motion for Summary Judgment" (Docket Entry 20) (the "Motion").[1] For the reasons that follow, the Court should grant the Motion.

## BACKGROUND

Asserting violations of his constitutional rights, Bruce J. Funderburk (the "Plaintiff") sued Greensboro Police Officer S.M. McDonald (at times, the "Defendant") pursuant to 42 U.S.C. § 1983. (See Docket Entry 2 (the "Complaint") at 1-5.)[2]

---

[1] For legibility reasons, unless otherwise noted, this Opinion uses standardized spelling and capitalization in all quotations from the parties' materials.

[2] The Complaint's caption lists the "Defendant(s)" as "S.M. McDonald EtAL" [sic] (id. at 1), but includes only "S.M. McDonald" in the section identifying "each defendant named in the complaint" (id. at 2; see id. at 2-3). Further, when ordered to "fill out a summons for each defendant . . . and then return the summons(es) to the Clerk" (see Docket Entry 6 at 1), Plaintiff submitted only a summons for "S.M. McDonald" (Docket Entry 8 at 1; see Docket Entries dated Mar. 2, 2022, to Mar. 14, 2022). Accordingly, S.M. McDonald constitutes the only defendant in this matter. [Docket

According to Plaintiff's unverified Complaint:

At 3:19 p.m. on March 19, 2020, Plaintiff "was taken to Wesley Long Community Hospital & had his blood/DNA removed by force & without due process of a warrant[,] causing physical injury." (Id. at 5.) "Elizabeth Rees as well as Nathan Pickering are [the] physicians involved. [Plaintiff] never consented [to having] blood taken or the cruel & unusual forced excessive treatment. Officer S.M. McDonald removed blood without [a] warrant," which constituted an "illegal search & seizure" that "[d]eprived" Plaintiff of his rights. (Id.)[3] "Defendant (S.M. McDonald) being sworn should have known a warrant needed to be in place, to remove DNA/blood." (Id. at 4.) This forced blood collection caused Plaintiff mental, physical, and emotional trauma, for which he seeks a total of $150,000 in damages. (See id. at 5.)

Plaintiff thereafter filed interrogatories for Defendant, which help illuminate his theory of the case. (See generally Docket Entry 16.) As relevant here, the interrogatories ask:

> 1. Are you Defendant (S.M. McDonald[]) the first officer on the crime area?
>
> 2. Is it true [that] when an officer arrest[s] someone they are responsible for that person?

---

Entry page citations utilize the CM/ECF footer's pagination.]

    3  Earlier in the Complaint, Plaintiff identified the rights that he "claim[s were] violated by state or local officials" as "[his] 1st, 4th, 5th, 8th, & 14th amendment rights of the Constitution." (Id. at 3.)

2

> 3. What is Greensboro Police Department's policy for [a] criminal [defendant] exposing a victim to bodily fluids?
>
> *****
>
> 5. What [is] Wesley Long Community Hospital['s] policy for refusal of treatment?
>
>   (A) What is [the] policy when bodily fluid has been exposed by someone being arrested & [sic] a government worker/hospital personnel?
>
> 6. Did Plaintiff in fact refuse treatment?
>
>   (A) Did Plaintiff have a right to refuse treatment?
>
> 7. Will video from Wesley Long hospital show [Plaintiff] being forcefully held down while blood/DNA was removed & tested?

(Id. at 2-3.)

Defendant subsequently moved for summary judgment on the grounds that she "did not request or participate in obtaining a withdrawal of Plaintiff's blood on March 19, 2000 [sic]." (Docket Entry 20 at 2.) In support of the Motion, Defendant avers:

Defendant serves "as a sworn law enforcement officer with the Greensboro Police Department." (Docket Entry 20-1, ¶ 1.) "On March 19, 2020[, she] responded to a call for service[] at In-Town Suite at 501 Americhase Drive in reference[] to a suspicious subject last seen running and screaming on the third floor of the motel." (Id., ¶ 2.) "Officer Boyer also arrived at the scene and located [Plaintiff] outside laying on the ground wearing pajama pants and no shirt or shoes. It was apparent he was impaired by [his] behavior and speech." (Id.) "Officer Boyer had already

3

called Guilford County Emergency Services as Plaintiff reported he had been drinking and taking medication. It was also learned that [Plaintiff] was the suspect in [a] larceny at the ABC store located at 500 Americhase Drive." (Id.) Next:

> [Defendant] checked with Officer Boyer to confirm he would stand by with [Plaintiff] while [Defendant w]ent to the ABC store to further investigate the larceny. At this time, [Defendant] was now standing and fighting with Officer Boyer. Officer Boyer and [Defendant] were able to place[ Plaintiff] in handcuffs but he still continued to resist. As a result of his resistance and the struggle to secure him, he incurred a cut and scratch above his left eye, an abrasion to [his] left shoulder and a cut on [his] left wrist. EMS also arrived and attempted to ask [Plaintiff] if he wanted to be seen at the hospital. He indicated he wanted to be left alone to drink.
>
> During this time, [Plaintiff] was identified as the person who stole a pint of Crown Apple and a fifth of Di Amore Amaretto [from the ABC store] and he was placed under arrest. It was decided that, as he would need to be transported to Guilford County Detention Center for an initial hearing before a magistrate, he would be transported to Wesley Long Hospital for a medical clearance prior to the transport to the jail.
>
> As he was being placed on the EMS gurney, he spat in both [Defendant's] face and the face of the paramedic. There was no exposure to blood borne pathogen and [Defendant] merely cleaned [her] face while in the ambulance.
>
> As per Greensboro Police Directive 8.6.2, a copy of which is attached as Exhibit 1,[4] this is not considered a significant exposure as the sputum did not contain blood and it did not come in contact with any open wound.
>
> While obtaining medical clearance, [Defendant] stood by the hospital examination room as [Plaintiff] was in

---

4  The referenced exhibit bears the title "Protection from Bloodborne Communicable Disease." (Docket Entry 20-2 at 1.)

police custody.  At no time did [Defendant] request any withdrawal of blood from [Plaintiff] or any way assist any medical staff with withdrawal of blood or any other medical treatment regarding [Plaintiff]. [Plaintiff] was examined and released on March 19, 2020 at 2039 hours by hospital staff. . . .

[Plaintiff] was then transported to the Guilford County Detention Center and charges were issued for Larceny, Assault on Law Enforcement Officer, Assault on Medical Personnel, Malicious Conduct by a Prisoner and Resist, Delay and Obstruct.

(Id., ¶¶ 3-8 (internal paragraph numbering omitted); see also Docket Entry 20-4 at 4-5, 8 (detailing events in incident report).)

Plaintiff filed a response, under penalty of perjury, to the Motion.  (See Docket Entry 22 (the "Response") at 4.)  The Response states:

[Plaintiff] ask[s] for [a] fair ruling in case 1:21cv574.  It is clear there is an issue(s) of the manner in which blood was removed & tested without a warrant or [Plaintiff's] consent.

Under Section 242 of Title 18 [United States Code] whoever, under color of any law, statute[,] ordinance[,] regulation, or custom, willfully subjects any person in any state, territory[,] commonwealth, possession, or district to the deprivation of any rights, privileges[,] or immunities secured or protected by the Constitution or laws of the United States shall be fined under this Title or imprisoned not more than one year, or both[,] and if bodily injury results from the acts committed in violation of this section or if such acts include the use, attempted use[,] or threatened use of a dangerous weapon, explosives, or fire, shall be fined.

Plaintiff (Bruce Funderburk) has made [a] proper claim of Defendant (S.M. McDonald) officer of Greensboro Police Department denying the 4[th], 5[th], & 14[th] Amendment Rights of Plaintiff (Bruce Funderburk) rights to refuse treatment, not to be held for [the] same offence twice,

5

without due process of law.  Those are the 4ᵗʰ & 5ᵗʰ
Amendment Rights [that] Plaintiff ask(s) to be ruled on.

(Id. at 1-2.)⁵

## **DISCUSSION**

### **I. Relevant Standards**

#### **A. Summary Judgment Standards**

"The [C]ourt shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The movant bears the burden of establishing the absence of such dispute. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

---

5  After Plaintiff filed the Response, the Clerk sent Plaintiff a Roseboro notice indicating that he "ha[d] the right to file a 20-page response in opposition to the [Motion]" and that, if "[Defendant] filed a motion for summary judgment or filed affidavits, [Plaintiff's] response may be accompanied by affidavits setting out [his] version of any relevant disputed material facts or [he] may submit other responsive material." (Docket Entry 23 at 1.)  The notice cautioned that "[Plaintiff's] failure to respond or, if appropriate, to file affidavits or evidence in rebuttal within the allowed time may cause the [C]ourt to conclude that the defendant(s)' contentions are undisputed and/or that [Plaintiff] no longer wish[es] to pursue the matter." (Id.)  "Therefore," the notice continued, "unless [Plaintiff] file[s] a response in opposition to the defendant(s)' motion(s), it is likely [his] case will be dismissed or summary judgment granted in favor of the defendant(s)." (Id.)  Plaintiff did not file any additional responses to the Motion. (See Docket Entries dated Feb. 10, 2023, to present.)

6

In analyzing a summary judgment motion, the Court "tak[es] the evidence and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (en banc). In other words, the nonmoving "party is entitled 'to have the credibility of his evidence as forecast assumed, his version of all that is in dispute accepted, [and] all internal conflicts in it resolved favorably to him.'" Miller v. Leathers, 913 F.2d 1085, 1087 (4th Cir. 1990) (en banc) (brackets in original) (quoting Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979)). If, applying this standard, the Court "find[s] that a reasonable jury could return a verdict for [the nonmoving party], then a genuine factual dispute exists and summary judgment is improper." Evans v. Technologies Applications & Serv. Co., 80 F.3d 954, 959 (4th Cir. 1996).

Nevertheless, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. Moreover, "the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment." Lewis v. Eagleton, No. 4:08-cv-2800, 2010 WL 755636, at *5 (D.S.C. Feb. 26, 2010) (citing Baber v. Hospital Corp. of Am., 977 F.2d 872, 874-75 (4th Cir. 1992)), aff'd, 404 F. App'x 740 (4th Cir. 2010); see also Pronin v. Johnson, 628 F. App'x 160, 161 (4th Cir. 2015) (explaining that

7

"[m]ere conclusory allegations and bare denials" or the nonmoving party's "self-serving allegations unsupported by any corroborating evidence" cannot defeat summary judgment). Further, factual allegations in a complaint or other court filing constitute evidence for summary judgment purposes only if sworn or otherwise made under penalty of perjury. See Reeves v. Hubbard, No. 1:08cv721, 2011 WL 4499099, at *5 n.14 (M.D.N.C. Sept. 27, 2011), recommendation adopted, slip op. (M.D.N.C. Nov. 21, 2011).

### B. Fourth Amendment Standards

Under the Fourth Amendment, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV.[6] "The overriding function of the Fourth Amendment is to protect personal privacy and dignity against unwarranted intrusion by the State." Schmerber v. California, 384 U.S. 757, 767 (1966). The Supreme Court has "recognized 'the security of one's privacy against arbitrary intrusion by the police' as being 'at the core of

---

[6] The Fourth Amendment's right to "privacy against arbitrary intrusion by the police" is "enforceable against the States through the Due Process Clause [of the Fourteenth Amendment]." Wolf v. Colorado, 338 U.S. 25, 27-28 (1949), overruled on other grounds by Mapp v. Ohio, 367 U.S. 643 (1961); see also Mapp, 367 U.S. at 650-53.

8

the Fourth Amendment' and 'basic to a free society.'" Id. (brackets omitted). Thus, "compulsory administration of a blood test" by a government official "plainly involves the broadly conceived reach of a search and seizure under the Fourth Amendment." Id.; see also id. ("Such testing procedures plainly constitute searches of 'persons,' and depend antecedently upon seizures of 'persons,' within the meaning of that Amendment."). Nevertheless, even the compulsory extraction of a blood sample does not violate the Fourth Amendment if it qualifies as reasonable. See id. at 768 ("[In the context of] compelled intrusions into the body for blood to be analyzed for alcohol content, the Fourth Amendment's proper function is to constrain, not against all intrusions as such, but against intrusions which are not justified in the circumstances, or which are made in an improper manner. In other words, the questions we must decide in this case are whether the police were justified in requiring petitioner to submit to the blood test, and whether the means and procedures employed in taking his blood respected relevant Fourth Amendment standards of reasonableness."); see also id. at 768-72 (finding no Fourth Amendment violation under circumstances of case, which involved physician, on officer's instructions, drawing blood sample from hospitalized, visibly intoxicated individual under arrest for drunk driving subsequent to car accident).

9

**C. Section 1983 Standards**

Finally, Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[] . . . .

42 U.S.C. § 1983.[7]

Thus, "Section 1983 authorizes a plaintiff to sue for an alleged deprivation of a federal constitutional right by an official acting under color of state law." Williamson v. Stirling, 912 F.3d 154, 171 (4th Cir. 2018) (internal quotation marks omitted). "To establish personal liability under § 1983, however, the plaintiff must affirmatively show that the official charged acted personally in the deprivation of the plaintiff's rights. That is, the official's own individual actions must have violated the Constitution." Id. (brackets, citation, and internal quotation marks omitted). "Importantly, mere knowledge of such a deprivation does not suffice." Id.

---

    7  Plaintiff's Response mistakenly relies upon "18 U.S.C. § 242, the criminal counterpart of 42 U.S.C. § 1983," Canty v. City of Richmond, Virginia, Police Dep't, 383 F. Supp. 1396, 1401 n.3 (E.D. Va. 1974), aff'd sub nom. Canty v. Brown, 526 F.2d 587 (4th Cir. 1975); see also United States v. Price, 383 U.S. 787, 794 n.7 (1966) ("'Under color' of law means the same thing in [Section] 242 that it does in the civil counterpart of [Section] 242, 42 U.S.C. § 1983."). (See Docket Entry 22 at 1-2.)

**II. Analysis**

As a preliminary matter, although it also references the First, Fifth, Eighth, and Fourteenth Amendments (see Docket Entry 2 at 3), the Complaint only raises a fourth-amendment claim against Defendant (see id. at 4-5). Similarly, although it maintains that Defendant denied Plaintiff's "rights to refuse treatment, not to be held for [the] same offence twice, without due process of law," thereby violating his "4th, 5th, & 14[th] Amendment Rights" (Docket Entry 22 at 2), the Response contains no evidence supporting any claims under the Fifth or Fourteenth Amendments for violations of Plaintiff's due process or double jeopardy rights (see id. at 1-4).[8] Thus, this action involves only Plaintiff's claim that Defendant violated his fourth-amendment rights by removing his blood without a warrant. (See Docket Entry 2 at 4-5.)

Because Plaintiff did not verify his Complaint (see id. at 1-11) or otherwise attest to its contents "as true under penalty of perjury," as permitted under 28 U.S.C. § 1746, see Nissho-Iwai Am. Corp. v. Kline, 845 F.2d 1300, 1306 (5th Cir. 1988) (explaining that Section 1746 "permits unsworn declarations to substitute for an affiant's oath if the statement contained therein is made 'under

---

8 Even if the Response contained such information, Plaintiff could not use his Response to raise such claims. See, e.g., Robinson v. Bowser, No. 1:12cv301, 2013 WL 5655434, at *3 (M.D.N.C. Oct. 16, 2013) ("Fourth Circuit courts have consistently concluded that a party may not use a brief opposing summary judgment to amend a complaint.") (collecting cases).

11

penalty of perjury' and verified as 'true and correct'"), the Complaint's unsworn allegations do not constitute evidence for summary judgment purposes, see In re French, 499 F.3d 345, 358 (4th Cir. 2007) (Whitney, J., concurring); Reeves, 2011 WL 4499099, at *5 n.14. The same holds true for Plaintiff's interrogatories to Defendant. (See generally Docket Entry 16.) Further, although submitted under penalty of perjury (see Docket Entry 22 at 4), the Response contains no facts, let alone facts supporting Plaintiff's assertion that he "made [a] proper claim of Defendant . . . denying [his] 4th [Amendment] . . . rights to refuse treatment" (id. at 2; see id. at 1-4). Such a bare assertion remains insufficient to preclude summary judgment. See Pronin, 628 F. App'x at 161. Accordingly, the only evidence in this matter reflects that Defendant did not "request any withdrawal of blood from [Plaintiff] or any way assist any medical staff with withdrawal of blood or any other medical treatment regarding [Plaintiff]." (Docket Entry 20-1, ¶ 7.)

As noted, Section 1983 requires an affirmative showing that a defendant "acted personally in the deprivation of the plaintiff's rights[;]" in other words, a defendant's "own individual actions must have violated the Constitution." Williamson, 912 F.3d at 171 (internal quotation marks omitted). "Importantly, mere knowledge of such a deprivation does not suffice." Id. Because the evidence, even construed in Plaintiff's favor, remains

12

"insufficient to show that [Defendant] was personally involved in any" compelled withdrawal of Plaintiff's blood, "no reasonable trier of fact could find that [Defendant's] 'own individual actions' violated the Constitution." Id. at 172. "Accordingly, [Defendant is] entitled to summary judgment on [Plaintiff's fourth-amendment claim] because [she] lacked sufficient personal involvement in the alleged constitutional deprivation[.]" Id.[9]

## CONCLUSION

Plaintiff's claims against Defendant fail as a matter of law.

---

9 Further, if Plaintiff pursues an official-capacity claim against Defendant (see Docket Entry 2 at 2 (marking both individual capacity and official capacity); but see id. at 1-11 (containing no allegations supporting official-capacity claim)), that claim likewise fails. Under Section 1983, official-capacity liability exists only if "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." Collins v. City of Harker Heights, 503 U.S. 115, 121 (1992) (internal quotation marks omitted). Relevant here, "an official's discretionary acts, exercised in carrying out official duties, do not necessarily represent official policy." Perdue v. Harrison, No. 1:17cv403, 2017 WL 4804363, at *2 (M.D.N.C. Oct. 24, 2017). To the extent that Plaintiff suggests that the alleged blood withdrawal occurred pursuant to Greensboro Police Department policy regarding exposures to potential biological hazards (see Docket Entry 16 at 2-3), the conduct alleged violates the relevant policy (see Docket Entry 20-2 at 1, 6-7). Because any withdrawal of Plaintiff's blood allegedly occurred in a manner inconsistent with official policy, Plaintiff's official-capacity claim, if any, fails as a matter of law.

**IT IS THEREFORE RECOMMENDED** that the Motion (Docket Entry 20) be granted.

This 13th day of April, 2023.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**